IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Colleen Cimerman,                                                     Case No. 3:12CV1036

    Plaintiff

    v.                                                                        **ORDER**

Gary Cook,

    Defendant


This is a Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654, case in which plaintiff Colleen Cimerman alleges defendant Judge Gary Cook fired her for exercising her rights under the FMLA.

Defendant moves for summary judgment (Doc. 81) on the grounds that Colleen Cimerman is not a qualified employee under the FMLA, and, even if she were not exempt from FMLA coverage, she was fired for a legitimate reason.  For the following reasons, I deny defendant's motion for summary judgment.

## Background

Beginning in 1999, Cimerman worked for the Lucas County, Ohio, Court of Common Pleas as a criminal bailiff and worked for several other judges before Judge Cook became a judge in 2009.  Cimerman thereafter worked under Judge Cook until her termination in February 2011.

The job description for the criminal bailiff position defines the position as one in which the bailiff is a personal and confidential employee for an individual judge,

responsible for maintaining the criminal docket, communicating with outside parties, and managing all criminal cases in an efficient manner. While assigned to Judge Cook, Cimerman reported only to him and managed his entire criminal docket.

In February 2006, for the birth of a daughter, Cimerman requested and obtained her first FMLA leave. She had contacted the Court's Human Resources Department, which approved her request for FMLA leave from March until July 2006. She returned after her leave without incident.

The events giving rise to this lawsuit began in December 2010, after Cimerman had begun to experience symptoms of depression and anxiety. At the advice of her family physician, Cimerman sought to take a leave of absence from work. She contacted the Court's Human Resources Department, which told her that, if she submitted the required paperwork, she would again be approved for FMLA leave. Her leave began December 16, 2010, and was to end January 18, 2011.

Though Judge Cook disputes Cimerman's contention, she claims he called her a few days after her leave had begun, demanding to know what was causing her anxiety and depression and yelling at her before hanging up.

Judge Cook asserts that, before Cimerman's December leave, he had several times warned Cimerman about poor job performance. He states that, at some point after Cimerman had begun the December leave, he and his civil bailiff found eight boxes full of work that Cimerman had not completed before beginning her leave. On making this discovery, Judge Cook concluded that he could no longer rely on Cimerman to complete her work in a timely manner. He decided that she would not return to his courtroom when her FLMA leave concluded.

2

On January 14, 2011, Cimerman called the courtroom to find out if a trial would be going forward when, as she expected, she returned on January 18. Judge Cook's civil bailiff told Cimerman not to return to the courtroom or report to the courthouse for work; instead, the bailiff told Cimerman, she was to report to Court Administrator Donald Colby's office. When Cimerman did so, Colby told her she would be placed on administrative leave.

A few weeks later, on February 4, 2011, Colby called Cimerman to set up a second meeting in his office. At the meeting Cimerman was shown the boxes of (apparently still undone) work that Judge Cook claimed she left undone. Cimerman stated she had never seen the boxes before and did not know where they had come from. Judge Cook accused Cimerman of failing to complete paperwork that would have allowed an offender to go home from jail in time for the holidays. Cimerman claimed that the work had accumulated while she was on leave and she could not have possibly processed the paperwork.

Colby told Cimerman that she could resign or be terminated. On February 13, 2011, Cimerman received a letter in the mail notifying her that she had been terminated from her position.

Plaintiff has filed this suit against Judge Cook alleging FMLA retaliation (Doc. 1), and defendant now moves for summary judgment.

## Standard of Review

3

Parties are entitled to summary judgment under Fed. R. Civ. P. 56 when they fail to establish an element that is essential to that party's case for which that party has the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party must establish the absence of material fact. *Celotex,* 477 U.S. at 323. When the movant has met the initial burden, the burden then shifts to the nonmoving party to show that an issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,250 (1986).

In deciding a motion for summary judgment, all facts must be construed in the light most favorable to the nonmoving party. *Wilkie v. Robbins*, 552 U.S. 537, 543 (2007). The movant will be granted summary judgment only if no issue of material fact exists. *Celotex, supra,* 477 U.S. at 323.

## Discussion

Judge Cook seeks summary judgment on two theories. First, that Cimerman was a member of his "personal staff" and thus not covered under the FMLA. Second, even if Cimerman were eligible for FMLA coverage, Judge Cook fired her for a legitimate, non-retaliatory reason (namely, poor work performance and failure to complete important assigned duties).

Cimerman claims that Judge Cook is equitably estopped from raising the "personal staff" exemption because she had previously received FMLA leave and reasonably relied on the Court's Human Resources Department approval of her request for another FMLA leave. Cimerman also asserts that she was not fired for poor work performance but in retaliation for exercising her rights under the FMLA.

### A.  Personal Staff Exemption from FMLA Coverage

4

Judge Cook claims that Cimerman is not an eligible employee under the FMLA because she is a member of the "personal staff" of an elected official. The FMLA applies only to eligible employees as defined in 42 U.S.C. § 2000e(f):

> The term "employee" means an individual employed by the employer, except that the term "employee" shall not include any person elected to public office in any state or political subdivision or any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate advisor with respect to the exercise of the constitutional or legal powers of the office.

The Sixth Circuit has provided a list of factors to consider in determining if an employee is a member of an elected official's "personal staff":

> (1) Whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

*Horen v. Cook*, 546 F. App'x 531, 534 (6th Cir. 2013).

When analyzed under the balancing test presented in *Horen*, the undisputed material facts show that Cimerman was a member of Judge Cook's "personal staff" and should be exempt from FMLA leave.

### 1. Plenary Powers

Cimerman claims that Judge Cook did not have plenary powers of appointment and removal over her position because he did not hire her and because of the role that Colby played in her termination. She contends that Colby was the one to contact her

5

about meetings and ultimately about her termination. Cimerman also claims that she believed the decision to terminate her came from both Colby and Judge Cook.

The Sixth Circuit has already addressed the issue of plenary powers over an employee who was inherited by an elected official. In *Horen*, the court concluded that whether the employee was hired or inherited, the official still has authority to fire and hire a new employee, even if he or she chose not to. *Horen, supra*, 546 F. App'x at 535. Furthermore, the Sixth Circuit has also established that bailiffs are at-will employees that can be fired at will by the judge that they serve. *Wagner v. Celebrezze*, 166 F.3d 1216 (6th Cir. 1998).

### 2. Personal Accountability

The Common Pleas Court provided a description of the criminal bailiff position; in that description it says that a criminal bailiff "works as a personal and confidential employee to an individual judge of the Lucas County Common Pleas Court."

Cimerman worked almost exclusively for Judge Cook: her desk was located next to Judge Cook's desk and she was responsible for managing Judge Cook's entire criminal docket. The fact that Cimerman occasionally performed work for other judges does not outweigh the fact that she ultimately reported to Judge Cook. *Horen, supra*, 546 F. App'x at 536.

### 3. Relations With the Public

Listed in the description of the criminal bailiff position is that the bailiff:

> Effectively relays communications/information between the Judge and attorneys, probation officers, parole officers, the public, defendants, and various county agencies to insure efficient case management and confidence of the public in the administration of our criminal justice system. Monitors

6

and maintains the courtroom in relation to the general public and any request from the Judge.

Given this description it is clear that an outsider would have recognized Cimerman as representing Judge Cook in the Court's dealings with members of the public.

### 4. Control Over the Position

Cimerman argues that Judge Cook did not exercise a considerable amount of control over her position because he did not set her wages, have control over her benefits, determine entitlement to raises or bonuses, maintain her personnel file, or have his own employment policies to govern behavior.

These aspects of the relationship are not dispositive. The fact that pay scales and personnel policies are generally applicable to all employees within a governmental agency does not cause an otherwise confidential employee to fall outside the FMLA exemption that excludes personal staff members from FMLA coverage. *See Bland v. New York*, F. Supp. 2d 526, 544 (E.D.N.Y. 2003) (not necessary that the employee be a member of the judge's personal pay roll or that the judge be in charge of the benefits for the employee to be a personal employee and outside the FMLA).

A contrary result would cause many individuals with sensitive and confidential duties similar to Cimerman's to be outside the exemption. *Id.*  This would have the effect of abrogating the exemption in circumstances where it otherwise fits.

### 5. Level of Position

Cimerman claims that because she did not supervise other employees and because no one else worked under her that she should not be exempt from FLMA coverage.   It is

7

true that the lower an employee's position, the less likely that the "personal employee" exemption will apply. *Birch v. Cuyahoga Cnty. Probate Court*, 392 F.3d 151, 158 (6th Cir. 2004).

However, it is also true that Congress intended this exception to affect primarily immediate subordinates or first line advisors of elected officials. *Id.*

In Cimerman's case, she works directly with Judge Cook, with no other employee in-between. The Judge relied on Cimerman to complete her work, which was crucial to the smooth and effective operation of the court, in a timely fashion. Because Cimerman worked directly with the Judge, she is still considered to be a high level employee regardless of the fact that there are no employees working below her.

### 6. Intimacy of Working Relationship

Cimerman worked very closely with Judge Cook on matters pertaining to his criminal docket. Her desk was located directly next to his and she was responsible for the entirety of his criminal workload. Cimerman was the main point of communication between the judge and other parties, making an effective work relationship between the two of them dependent on trust and confidence.

### B. Equitable Estoppel

Given these facts, I conclude that Colleen Cimerman was a personal employee of Judge Cook and is exempt from FMLA coverage. But Cimerman claims Judge Cook nonetheless is equitably estopped from denying her FMLA protection. I agree.

The Sixth Circuit has held that in certain circumstances equitable estoppel applies to employer statements regarding an employee's FMLA eligibility, preventing the

8

employer from raising non-eligibility as a defense. *Dobrowski v. Jay Dee Contractors*, 571 F.3d 551, 554 (6th Cir. 2009).

To prove equitable estoppel, Cimerman must show: 1) a definite misrepresentation as to a material fact, 2) a reasonable reliance on the misrepresentation, and 3) a resulting detriment to the party relying on the misrepresentation. *Id.*

### 1. Definite Misrepresentation as to a Material Fact

The Court's FMLA policy states:

> Employees who have been employed by the Lucas County Court of Common Pleas, General Trial Division (or other Lucas county agency paid by the Lucas County Auditor), for at least (1) year, and have worked at least 1,250 hours during the preceding 12 month period are eligible for leave under the Family and Medical Leave Act.

The Court's policy statement is unambiguous and unqualified, and would lead a reasonable ineligible employee to believe she qualifies for FMLA leave. The court lists no other stipulations for leave other than having been employed for a year and having worked 1,250 hours in the prior twelve months. The court could have easily qualified this statement by including the different exemptions that could apply to court employees, including the personal employee exemption.

In *Tilley v. Kalamazoo Cnty. Rd. Comm'n*, 777 F.3d 303, 311 (6th Cir. 2015), the defendant's Personnel Manual contained similar wording. The court in *Tilley* held that statements in an employee manual are sufficient misrepresentations to evoke equitable estoppel. *Id.* at 313. Here, as in that case, policy statements ensured employees they qualified for FMLA leave, though in fact the FMLA did not cover them. *Id.* at 312.

### 2. Reasonable Reliance on the Misrepresentation

9

The Sixth Circuit requires the employee asserting estoppel must prove she altered her situation. Cimerman meets this requirement with an affidavit stating that she would have undertaken alternative treatment, rather than having taken leave, if she had known FMLA leave was not available to her.

### 3. Detriment to the Party Reasonably Relying on the Misrepresentation

Lastly, Cimerman has presented evidence that she suffered a detriment by relying on the information she obtained from the Court. Cimerman claims that, had she not been absent, she would have completed her work and thus avoided losing her job.

Job loss is undoubtedly a detrimental consequence. *E.g., Tilley, supra*, 777 F.3d at 314.[1]

Although plaintiff was one of Judge Cook's personal employees, he is equitably estopped from defending her FMLA retaliation claim on the basis of lack of entitlement to FMLA leave.

### C. Honest Belief Doctrine

Judge Cook also seeks summary judgment under the honest belief doctrine, claiming that Cimerman was not fired in retaliation for taking FMLA leave, but for not completing assigned and essential duties.

---

[1] Judge Cook contends that the Sixth Circuit's decision in *Horen*, in which the Circuit affirmed my dismissal on summary judgment of another Lucas County Common Pleas Court's FMLA claim, stands as precedent for the proposition that the Circuit does not recognize equitable estoppel in the FMLA context. I disagree: equitable estoppel was not at issue either before me or the Sixth Circuit. The Circuit's citation to a district court opinion, *Chen v. Grant County,* 2011 WL 3637693, *7 (E.D. Washington), did not constitute a decision on the distinct issues in this case.

10

In analyzing a FMLA retaliation case, I use the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

When a prima facie case for FMLA discrimination has been made, the burden shifts to the defendant to present a legitimate reason for its decision to terminate the employee.  *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012).  If the defense carries that burden, the plaintiff must then show that the defendant's reasons are pretext for unlawful discrimination.  *Donald, supra*, 667 F.3d at 762.

First, Cimerman must show that she has established a prima facie case for FMLA retaliation.  To do so, she must show four things:

> (1) She was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.

*Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006) (citing *Arban v. West Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003)).

It is undisputed that: 1) Cimerman was engaged in an activity protected by the FMLA; 2) Judge Cook knew she was exercising her FMLA rights; and 3) Judge Cook took an adverse employment action against Cimerman.

With regard to the fourth element, Cimerman's contention that the undone work, the basis for her termination, accumulated during her absence, rather than before, suffices to show the requisite causal connection.

Judge Cook has failed to meet his burden of articulating a legitimate, nondiscriminatory reason for firing Cimerman: the undone work. This is so because each of the conflicting affidavits regarding the allegedly incomplete work is conclusory.

11

At this point, Judge Cook has the burden of establishing the *bona fides* of his belief that Cimerman had left that work behind. To meet this burden, Judge Cook has to produce some evidence as to when the materials got into the boxes. To show that that he conducted the requisite investigation before concluding that Cimerman left the work undone, Judge Cook has to do more than merely claim that that was so. *See Tillman v. Ohio Bell Tel. Co.*, 545 F. App'x 340, 349 (6th Cir. 2013).

Absent something other than mutually conflicting assertions, Judge Cook has not shown that he relied on a good faith belief that Cimerman had gone on leave with a large amount of work left undone. To meet his burden of articulating a legitimate, non-pretextual basis for his actions, Judge Cook must present more proof that he, in fact, determined when the unfiled materials were available for processing, and that Cimerman could have processed them before going on leave.

He – not she, whom he barred from returning to the office – had access to the boxes. It is up to him to provide the missing proof as to when the materials were available for filing or other handling.

## Conclusion

Given the present state of the record, a rational jury could find that Judge Cook caused Cimerman's termination in retaliation for her having taken FMLA leave. Though Cimerman may not have been entitled to such leave under the FMLA, the court's policies and the fact it twice designated leaves related to family medical issues estop Judge Cook from asserting Cimerman was ineligible for FMLA leave.

It is, therefore,

ORDERED THAT: defendant's motion for summary judgment (Doc. 81) be, and the same hereby is, denied.

The Clerk shall forthwith set a status/scheduling conference.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge